## MICHAEL CRONLY *vs.* FREDERICK HALL.

Where an agent of the War Department of the Confederate Government issued the following instrument: "Confederate States Depository, Wilmington, pay Messrs. Collie & Co., or order, twenty thousand dollars," which was endorsed by the payees to the defendant, who endorsed it to another person, by whom it was endorsed to the plaintiff, *it was held*, (Rodman, J., dissenting,) that the instrument was illegal; that such illegality was apparent upon its face, and extended to all the endorsements.

This was an action of assumpsit commenced before the adoption of the Code of Civil Procedure, and tried at the January Term, 1872, of the Superior Court of NEW HANOVER County, before his Honor *Russell, J.*

The plaintiff declared as endorsee against the defendant, as endorser of an instrument, in the following words and figures:

"AGENCY WAR DEPARTMENT,
*Wilmington, Jan'y 18th,* 1865.

Confederate States Depository, Wilmington, pay Messrs. Collie & Co., or order, twenty thousand dollars.

(Signed) J. M. SEIXAS.

$20,000. *Agency War Dep't.*"

Pleas, general issue, illegality of consideration, and that the instrument was given in aid of the rebellion.

The instrument was endorsed by the payees, Collie & Co., to the defendant, and by the defendant to one Grady, and by Grady to the plaintiff.

On the trial, the handwriting of the drawer and of all the endorsers was proved; and it was also proved that Seixas, the drawer, was the agent of the Confederate States War Department at Wilmington, and that the plaintiff purchased the instrument from the last endorser, Grady, on the 20th January, 1865, paying therefor the amount called for by it in Confederate currency.

There was evidence given tending to excuse the want of a demand and notice to the defendant, but his Honor, without considering that point, being of opinion that the instrument was upon its face illegal and void, and that the plaintiff could not, under any circumstances, recover upon the endorsement of the defendant, so instructed the jury, who accordingly returned a verdict for the defendant.

There was a rule for a new trial which was discharged, and a judgment given for the defendant, from which the plaintiff appealed.

*Battle & Son,* for the plaintiff.

1. The instrument is a bill of exchange, and as such can as well be drawn by a government as by an individual. See Judge McLean's opinion in *United States* v. *Bank of the United States,* 5 How. Rep. 405, (16 Curtis 441.) See also *United States* v. *Bank of the Metropolis,* 15 Peters 392, (14 Curtis 116.)

2. The mere dealing in Confederate securities was not illegal. *Phillips* v. *Hooker,* Phil. Eq. Rep. 193. *Haughton* v. *Merony,* 65 N. C. Rep. 124.

3. The illegality of the consideration, supposing that it existed between the original parties, did not extend to the transactions between the endorsers and endorsees, because such transactions were fair and *bona fide.* Besides, each endorsement was the drawing of a new bill upon a good and sufficient consideration. Story's Prom. Notes, sec. 192, note 2. 2 Kent's Com. at pages 79 and 80. *Parr* v. *Eliason,* 1 East. 92. Bailey on Bills 149 and 179.

Of the cases cited from the 66 N. C. Rep., the first, *Baucum* v. *Smith,* 537, is not against us, and the second, *Kingsbury* v. *Suit,* 601, is in our favor.

*M. London,* for the defendant.

BOYDEN, J. Whether the paper upon which the endorsements in this case were made, is a bill of exchange it is unnecessary for the Court to decide, as the instrument shows a trading with the war department of the so-called and now defunct Confederate Government. The sole object and business of this department during its existence was to aid in carrying on the war against the rightful government of the United States, and consequently all trading directly with that department was illegal and void, and no sale growing out of such trading could be maintained in the Courts of the rightful government by the party thus trading, no matter what the form of the instrument evidencing such illegal transaction. *Martin* v. *McMillan*, 67, N. C. R. 486. *Clemmons* v. *Hampton*, 64, N. C. R. 264. *Critcher* v. *Halloway*, same 526. *Kingsbury* v. *Flemming*, 66, N. C. R., and *Baucum* v. *Smith*, same 537.

In our case the illegality appears upon the face of the instrument, and thereby every subsequent holder, whether by endorsement or otherwise, is affected with notice of this illegality, and can have no better or higher claim to maintain an action thereon in the Courts of the rightful government, than the original holder who made the illegal trade with the war department. Had the Confederate Government maintained its independence, no doubt, the Courts of that government would have held this contract legal; but even in that case, a question might arise whether the endorsement by an individual of this contract of the government would render the endorser liable to the endorsee, or be regarded as a mere mode of furnishing evidence of the person entitled to receive payment from the government, as in the case of the endorsement of one of our State bonds. Certainly those who have endorsed such bonds in our State have done so under the idea that they did not thereby make themselves personally liable, as endorsers,

to pay the bonds in case the State failed to do so, but these endorsements have been made as preserving evidence, to the government, of the party who was entitled to receive payment.

There is no error. This will be certified.

Rodman, J. *dissenting.* The original bill of course was illegal and void. But as each endorsement is the drawing of a new bill, it seems to me that the endorsers have no connection with the original illegal contract, but may maintain actions between each other.

Per Curiam,                              Judgment affirmed.